UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CYNTHIA K. BERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 12-CV-488-JED-FHM |
| ) | |
| **TRANSPORTATION DISTRIBUTION** ) | |
| **COMPANY, GREAT WEST** ) | |
| **CASUALTY COMPANY, and** ) | |
| **RANDY M. EASTERLING,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

The Court has for its consideration defendants' Motion to Exclude Plaintiff's Biomechanical Engineering Expert and Brief in Support (Doc. 60), defendant Transportation Distribution Company's Motions in Limine and Brief in Support (Doc. 65), defendant Randy Easterling's Motions in Limine and Brief in Support (Doc. 66), and plaintiff's Motion in Limine (Doc. 67).

### I. BACKGROUND

Plaintiff, Cynthia K. Berry, was injured in a motor vehicle accident on June 8, 2010, while traveling on U.S. Highway 64. She asserts that the driver of the semi-truck, Randy Easterling, and his employer, Transportation Distribution Company ("TDC") – both co-defendants with Great West – were negligent and that their negligence resulted in her damages. As a result, Berry brought this action in Tulsa County District Court, alleging negligence against Easterling and TDC and a claim against Great West Casualty Company ("Great West") as a motor carrier insurer. On August 28, 2012, defendants removed the action to this Court, based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

On July 31, 2013, the Court granted TDC's motion for summary judgment, finding that plaintiff's direct negligence claims against TDC must be dismissed as a result of TDC's stipulation that it would be liable under a theory of *respondeat superior* if Easterling is ultimately found to be liable (Doc. 62). On November 8, 2013, the Court denied Great West's motion for summary judgment, finding that Oklahoma law permits plaintiff's direct joinder of Great West as a defendant (Doc. 95).

## II. Discussion

### A. Defendants' Motion to Exclude Plaintiff's Biomechanical Engineering Expert and Brief in Support (Doc. 60)

Defendants seek to exclude from trial plaintiff's biomechanical engineering expert, John Smith. Defendants argue that Smith should be excluded because he is unqualified, his opinions are not reliable or scientific, his opinions invade the province of the jury, and his testimony is cumulative. Plaintiff responds that the defendants have mischaracterized the purpose of Smith's testimony and otherwise offered no valid justification for barring that testimony.

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). In *Daubert*, the Supreme Court suggested factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant

scientific or expert community." *Baines*, 573 F.3d at 985 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* inquiry is "flexible," and the district court does not need to consider every *Daubert* factor. *Id*. at 989–90; *see also Bitler v. A.O. Smith. Corp*., 400 F.3d 1227, 1233 (10th Cir. 2004) ("[T]his list is neither definitive nor exhaustive and [ ] a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

Defendants argue that Smith is not qualified to provide medical opinions, yet does so in his expert report. In *Finn v. BNSF Ry. Co*., the court addressed a similar challenge to a biomechanical expert witness and explained this type of witness' role as follows:

> The Court finds it important to offer a definition of biomechanics: the science concerned with the action of forces, internal and external, on the living body. STEDMAN'S MEDICAL DICTIONARY (25th Ed., 1989). "Biomechanical experts have extensive knowledge about how human bodies move when forces are applied to them and thus may provide testimony as to how vehicle occupants move and are impacted in vehicular accidents." *Ingraham v. KIA Motors America, Inc*., 2007 WL 2028940 W.D.Okla., n. 12 (citing *Nash v. General Motors Corp*., 153 P.3d 73, 75, n. 1 (Okla.Civ.App.2006)). Biomechanical testimony can offer, distinct from medical opinions, testimony concerning the biomechanical forces and relationship between these forces and the medical opinions of the medical experts. Such testimony is not to determine a party's medical condition, but rather, to determine whether a condition or conditions are consistent with the types of forces in an accident.

2013 WL 462057 (D. Wyo. Feb. 6, 2013). Smith never purports to be trained as a medical doctor or to provide an opinion as a medical expert. As plaintiff points out, the purpose of his testimony is to establish that, from a biomechanical standpoint, the forces which occurred in plaintiff's car accident were of the type and force which can cause injuries such as those sustained by plaintiff. Based upon his curriculum vitae, Mr. Smith appears to be qualified to gives such an opinion. He has extensive experience with respect to the forces applied to the body in car accidents and the impact those forces are likely to have on the human body. As such, he is qualified to render testimony on this subject.

Defendants also contend that Smith should be excluded from trial because his opinions are not reliable or scientific. More precisely, defendants argue that Smith reached his opinions without performing a thorough investigation because, among other things, he did not take measurements of the damage to the vehicle, physically inspect the damaged vehicle or the scene of the accident, examine the plaintiff, or perform calculations with respect to vehicle stiffness. The Court has reviewed Mr. Smith's testimony with respect to the alleged deficiencies in his methodology and finds that they do not rise to the level of rendering his opinions unreliable or devoid of scientific basis. The defendants have failed to demonstrate that the complained of deficiencies are critical to the scientific reliability of a biomechanical expert's opinion. In other words, the defendants have made no showing that a biomechanical expert's opinions are not sufficiently reliable in the absence of a physical inspection of the vehicle, physical examination of the plaintiff, and calculations regarding vehicle stiffness. Mr. Smith's expert report is based upon scientific methodology and the alleged deficiencies in that methodology to which defendants point can be addressed by cross examination. As the Supreme Court has noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

The defendants next argue that Mr. Smith's testimony invades the province of the jury and is unhelpful. More specifically, the defendants complain that Mr. Smith's opinions are merely based upon speculation and are generally the type of conclusion that an ordinary layperson is capable of reaching after looking at the photographs of plaintiff's vehicle. Plaintiff responds that Mr. Smith's testimony will assist the jury in understanding whether the vehicle impact generated sufficient force to cause her injuries – an issue directly disputed by defendants.

4

The Court finds that the subject of Smith's testimony is not one within the common experience of a layperson. Mr. Smith's opinions regarding the vehicle impact are based upon the application of principles of physics to demonstrate what happens to the human body inside of a vehicle when it is struck. As such, Mr. Smith's testimony goes beyond the common sense experience of a layperson. *See Belisle v. BNSF Ry. Co*., 697 F. Supp. 2d 1233, 1247 (D. Kan. 2010) ("the manner of how the body may turn and distance it may be thrown based on weights and angles of being struck are not necessarily common sense conclusions").

Finally, defendants argue that Mr. Smith's testimony would be cumulative because he will offer testimony regarding accident reconstruction and provide medical opinions. Defendants make an off-hand reference to the fact that plaintiff has a separate retained expert in accident reconstruction. Plaintiff does not respond to this contention. However, in the parties' joint proposed pretrial order, Mr. Smith is listed as testifying only with regard to biomechanics. Ronald Lee Blevins is listed as an expert witness on behalf of plaintiff as to accident reconstruction. In light of these designations, Mr. Smith will be limited to testifying on the subject of biomechanics. As to defendants' second contention – that Mr. Smith will provide medical opinions – the Court has already discussed the purpose of a biomechanical expert's testimony. Mr. Smith will not be making injury diagnosis or otherwise rendering a medical opinion, but will be permitted to testify "concerning the biomechanical forces and relationship between these forces and the medical opinions of the medical experts", as he has done in his report. *Finn*, 2013 WL 462057, at *2.

The Court finds that there is no basis for excluding Mr. Smith's testimony pursuant to *Daubert*. Defendants' Motion to Exclude Plaintiff's Biomechanical Engineering Expert and Brief in Support (Doc. 60) is therefore denied.

### B. TDC's Motions in Limine and Brief in Support (Doc. 65)

TDC seeks to exclude several categories of evidence from trial. Plaintiff did not file a response to TDC's motion. As such, the Court has the discretion to deem confessed TDC's motion. However, many of the issues TDC seeks to exclude do not warrant a pretrial evidentiary ruling. On October 9, 2013, the parties filed a Notice to the Court regarding their respective motions in limine (Doc. 79), which stated that an agreement had been reached with respect to some of the issues raised in the limine motions.

"The motion in limine is a creature of neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence." *Koch v. Koch Indus., Inc*., 2 F. Supp. 2d 1385, 1387-88 (D. Kan. 1998). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co*., 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted). While pretrial limine rulings can save time and interruption at trial, "a court is almost always better situated during the actual trial to assess the value and utility of evidence. For this reason, some courts defer making in limine rulings unless the 'evidence is clearly inadmissible on all potential grounds.'" *Id*. (quoting *Hawthorne Partners v. AT & T Technologies, Inc*., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). As such, this Court often defers its ruling on evidentiary issues until such a party seeks to admit such evidence at trial and the relevant facts have been developed in the trial process.

### i. References to direct causes of action against TDC

The parties agree that this evidence should excluded (Doc. 79). TDC's first motion in limine is therefore granted.

### ii. References to the commercial driver's license study guide

TDC seeks to preclude any questions by plaintiff at trial regarding the Commercial Driver's License Manual, which is a study guide for prospective commercial driver's license recipients. TDC argues that the standards discussed in this manual are not the law and should not the subject of Easterling's examination at trial.

TDC has failed to establish that there is no legitimate purpose for examination related to this manual or the standards within it. As such, the Court will reserve its ruling on this issue until it occurs at trial, should plaintiff attempt to do so. TDC's second motion in limine is conditionally denied.

### iii. References to a higher standard of care for commercial truck drivers

TDC seeks to prevent insinuations at trial that commercial truck drivers should be held to a "higher" standard of care than non-commercial drivers. TDC makes reference to Mr. Easterling's deposition where plaintiff's counsel used the term "extreme safety" in reference to Easterling's operating of his truck (Doc. 65, at 6). In addition, TDC argues that plaintiff should not be permitted to use the term "professional driver" in reference to Easterling because it suggests a higher standard of care.

The Court finds that TDC has failed to make a showing that any legitimate danger exists that plaintiff will attempt to suggest that Easterling is subject to a "higher" standard of care. The Court will therefore reserve its ruling on this issue and handle any such objection if and when it arises at trial. TDC's third motion in limine is conditionally denied.

> iv. **References to Randy Easterling's actions on days other than June 8, 2010**

TDC asks the Court to exclude any references at trial to any acts and/or omissions on the part of Easterling on days other than the date of the accident. TDC argues that such evidence is impermissible character evidence under Fed. R. Evid. 404.

The Court agrees that, to the extent plaintiff seeks to introduce evidence of instances of violations or negligent driving on days other than the date of the accident at issue here, such evidence would be impermissible character evidence under Rule 404. "The Federal Rules of Evidence generally preclude the use of evidence of crimes or wrongs unrelated to the conduct at issue if that evidence is offered to prove a propensity to behave in a particular manner." *Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005). There does not appear to be a proper purpose for which plaintiff could present such evidence in this case. Plaintiff is therefore precluded from seeking to introduce evidence that Easterling may have failed to exercise due care in his driving on dates other than the one at issue in this case. Therefore, TDC's fourth motion in limine is granted.

> v. **References to any accident investigation**

TDC seeks to preclude any reference to its investigation of the collision between plaintiff and Easterling on the basis that it lacks relevance. The Court disagrees that TDC's post-accident investigation has no conceivable relevance to the issues to be tried in this case. Indeed, facts adduced in TDC's investigation could be highly relevant to the issue of whether Easterling exercised due care on the date in question. The Court will defer its ruling on this issue until trial. TDC's fifth motion in limine is therefore conditionally denied.

### vi. References to post-accident conduct

TDC seeks to exclude any reference to post-accident conduct by TDC related to Easterling's employment with TDC coming to an end. Specifically, TDC seeks to exclude testimony related to whether Easterling resigned or was asked to resign from TDC and whether his departure was related to the accident. TDC also seeks to exclude evidence related to any subsequent remedial measures taken by TDC following the accident; namely, TDC's decision to send Easterling to a driving refresher course.

The Court finds that TDC's decision to have Easterling attend a driving refresher course has no tendency to make any fact to be tried more or less probable, as this fact has no bearing on whether Easterling was negligent at the time of the accident. *See* Fed. R. Evid. 401. The Court finds that Easterling's departure from TDC is likewise irrelevant. As such, plaintiff is precluded from making reference to Easterling's attendance at the refresher course or Easterling's departure from TDC. TDC's sixth motion in limine is granted.

### vii. References to pretrial litigation disputes

The parties agree that this evidence should be excluded (Doc. 79). TDC's eighth motion in limine is therefore granted.

### viii. References to Defendants' knowledge of Plaintiff's damages and personal feelings regarding Plaintiff's case; exhibits not specifically identified on Pretrial Conference Order; and references to inflammatory comments and arguments

TDC seeks to prevent plaintiff from "indicating to the jury that the Defendants lack compassion or that they are indifferent to Plaintiff's damages" (Doc. 65, at 12); making reference to any pretrial litigation disputes; introducing exhibits not specifically identified in the pretrial order; and making inflammatory comments and/or arguments. TDC has not demonstrated that there is any substantial likelihood that plaintiff intends to take any of these above listed actions at

trial.  Should an attempt at raising such issues be made at trial, an appropriate objection would no doubt be sustained.  As such, the Court will reserve its ruling with respect to these issues.  TDC's seventh, ninth, and tenth motions in limine are thus conditionally denied.

### C. Randy Easterling's Motions in Limine and Brief in Support (Doc. 66)

Easterling seeks to exclude reference to a number of issues at trial.  Like TDC's motion, the majority of issues raised in Easterling's motion do not warrant an in limine ruling at this time and will instead be addressed at trial if and when they arise.  Also like TDC's motion, Easterling's motion was unresponded to by plaintiff, and could technically be deemed confessed.

#### i. Expert opinions of Dr. Kris Pachuri and Dr. Richard Hastings

Easterling seeks to prevent Dr. Kris Pachuri and Dr. Richard Hastings from offering expert testimony at trial regarding causation, prognosis, and future treatment.  Easterling complains that both Dr. Pachuri and Dr. Hastings were plaintiff's treating physicians and as such, cannot venture into the territory of expert physician testimony.  Dr. Hastings has been designated by plaintiff as an expert witness, but has not produced an expert report.  Dr. Pachuri has not been designated as an expert, nor does he appear to have produced an expert report.

"A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb,* 194 F.3d 1116, 1138 (10th Cir. 1999) (citing *Richardson v. Consolidated Rail Corp.,* 17 F.3d 213, 218 (7th Cir. 1994) and Fed. R. Civ. P. 26(a)(2) advisory committee's note (1998) (distinguishing between treating physicians and retained experts)).  In addition, "[a] treating physician may 'testify to prognosis, the extent of present and future disability, and the need for future medical treatment.  So long as based on the physician's personal knowledge gained from the care and treatment of the plaintiff, such opinions are appropriate without regard to the

requirements of Rule 26(a)(2).'" *Adrean v. Lopez*, 10-CV-0670-CVE-FHM, 2011 WL 6141121 (N.D. Okla. Dec. 9, 2011) (quoting *Goeken v. Wal–Mart Stores, Inc*., 2001 WL 1159751, at *3 (D. Kan. Aug. 16, 2001)). The same can be said for causation. That is, "to the limited extent that opinions about the cause of an injury are a necessary part of a patient's treatment", a treating physician may testify regarding causation. *Starling v. Union Pac. R. Co*., 203 F.R.D. 468, 479 (D. Kan. 2001). Further, "a treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony." *Davoll*, 194 F.3d at 1138.

Dr. Pachuri and Dr. Hastings will not be permitted to testify as expert witnesses of the type contemplated by Rule 26, as the requirements of that Rule have not been met for either. However, they will be permitted to testify regarding their treatment and care of plaintiff, as well as plaintiff's prognosis, future treatment requirements, and causation – *to the extent that such issues are within their personal knowledge gained during their treatment of plaintiff*. Easterling's first motion in limine is therefore granted, as provided above.

### ii.     References to the law

Easterling argues that the Court should prospectively exclude from trial all references to the law and witness testimony regarding knowledge of violations of the law. There is nothing before the Court which suggests that the plaintiff intends to ask questions of witnesses regarding ultimate issues or questions of law. As such, the Court will reserve its ruling on this issue and handle any such objection, if and when it arises, at trial. Hence, Easterling's second motion in limine is conditionally denied.

### iii.    References to TDC's corporate status, financial information, and size

Easterling seeks to exclude references to TDC's corporate status, financial information, and size, arguing that such information is not relevant to any issues to be tried. The parties have

11

both stated in the proposed pretrial order that whether plaintiff is entitled to a jury instruction on punitive damages is an issue of law to be litigated at trial. Oklahoma's punitive damages statute currently provides that a jury may consider, among other things, the "financial condition of the defendant." 23 *Okla. Stat*. § 9.1. In light of this statute, TDC's financial information is conceivably relevant. Easterling's third motion in limine is therefore conditionally denied.

### iv. References to liability insurance, insurance policies, and insurance adjusters

Easterling argues that any reference to liability insurance, insurance policies, and insurance adjusters should be excluded from trial. The Court has ruled that Great West, TDC's insurer, is a proper party to this litigation (*see* Doc. 95). As the Court noted, Oklahoma's statute permitting the direct joinder of a motor carrier insurer reflects a judgment on the part of the Oklahoma legislature that the insurance company's participation at trial is not unduly prejudicial. Given the Court's prior ruling, an order excluding *any* mention of insurance coverage is ill-advised. However, the Court will reserve its ruling with respect to this issue should it arise at trial. Easterling's fourth motion in limine is therefore conditionally denied.

### v. Opinion and hypothetical questions asked of lay witnesses

Easterling seeks to exclude opinion-based questions of lay witnesses, such as those posed to Steve Page, TDC's representative, during his deposition. Mr. Page was asked, for example, who he believed was "mostly at fault" for the accident and what percentages of blame he would ascribe to each party. (Doc. 66-1, at 14-15). Easterling also argues that the investigating police officer at the scene of the collision should not be permitted to provide his opinion regarding fault.

Under Fed. R. Evid. 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b)

helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." As to both Mr. Page and the investigating officer, the question of who was at fault in the accident is the ultimate issue to be litigated in this case and is one for the jury to determine. As a general rule, factual findings made during an investigating officer's investigation are relevant and admissible, however the officer is not permitted to testify regarding the ultimate issue of fault. *See, e.g., Ferguson v. Martin Brower, L.L.C.*, 04-CV-874-P(J), 2006 WL 964796 (N.D. Okla. Apr. 12, 2006) (permitting officer testimony regarding investigation but stating that officer should not testify as to which party is legally at fault). This general rule holds true in this case and applies with equal strength to Mr. Page. Accordingly, Mr. Page and the investigating officer will be permitted to testify regarding factual findings they made during the course of their respective investigations, but cannot state their opinion regarding which party is legally at fault.

      **vi.**    **References to questions that call for speculation and for which no supporting evidence exists; references to Randy Easterling's medical conditions; and questions that do not seek relevant evidence**

Easterling's sixth, seventh, and eighth motions in limine seek to exclude from trial questions that call for speculation, seek irrelevant evidence, and those related to Easterling's medical conditions. These requests are based entirely on speculation by Easterling about what might occur at trial in light of the questions asked during his deposition. It should go without saying that questions which call for speculation or for irrelevant evidence are objectionable. But it also stands to reason that questions posed in a deposition will likely differ significantly from those asked at trial. The Court will therefore reserve its ruling on these three issues and address objections on these topics, if and when they arise, at trial. TDC's sixth, seventh, and eighth motions in limine are thus conditionally denied.

13

### D.     Plaintiff's Motion in Limine (Doc. 67).

Plaintiff's Motion in Limine (Doc. 67) seeks to exclude several areas of testimony of Dr. Randall Hendricks, defendant's medical expert. Specifically, plaintiff asks the Court to exclude from trial any opinions of Dr. Hendricks regarding causation, prognosis, future treatment, and seriousness of the vehicle collision; any opinions which are not rendered to a reasonable degree of medical certainty; and any unsubstantiated opinions.[1]

#### i. Dr. Hendricks' opinions regarding causation, prognosis, future treatment, and seriousness of the vehicle collision

Plaintiff argues that Dr. Hendricks should not be permitted to testify about causation of plaintiff's injuries, her prognosis or future treatment, nor the seriousness of the vehicle collision in which she was involved. Plaintiff bases this argument on the fact that Dr. Hendricks did not personally examine plaintiff, reviewed only records created after the accident, and is not a biomechanical expert. The defendants argue that Dr. Hendricks' review of post-collision medical records alone is entirely appropriate under the circumstances and that, based upon his experience, he is qualified to render an opinion regarding causation.

Dr. Hendricks' opinions are based upon his review of medical records and diagnostic images created after the collision at issue. Defendants argue that a physical examination of plaintiff after this litigation was filed would have been of no use because it would only have revealed plaintiff's condition as it existed following multiple corrective surgeries, not as it existed following the collision. The Court agrees. It is not unheard of for a medical expert's testimony to be based entirely upon a review of available medical records. This type of limitation goes to the weight afforded such testimony, not its admissibility, and can be addressed

---

[1] Plaintiff's motion in limine also seeks to exclude any references to medical liens. Defendants have no objection to this request and it is therefore granted.

through cross examination. *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1313 (D. Kan. 2002) (holding that doctor's review of medical records only and lack of examination of patient did not warrant exclusion and instead should be addressed through cross examination). In addition, as the defendants point out, plaintiff has represented that she had no neck injuries prior to the collision, which would arguably render pre-collision medical records irrelevant. As such, these issues do not warrant Dr. Hendricks' exclusion.

Plaintiff argues that Dr. Hendricks should not be permitted to testify as to whether the collision was sufficient to cause plaintiff's injuries because he is not qualified as an expert in biomechanics. The defendants respond that Dr. Hendricks had some biomechanics training in medical school and is "qualified through experience" to testify to the likelihood that the collision was significant enough to cause plaintiff's injuries. (Doc. 69, at 7). When asked whether he had formal training in biomechanics, Dr. Hendricks stated "only the biomechanics we learned in orthopedics, which is somewhat extensive for mechanism of injury, fractures, injuries, strains." (Doc. 69-2, at 23).

While it is a close question, the Court finds that Dr. Hendricks will be permitted to offer his opinion as to whether he believes that the force of the collision was sufficient to cause the plaintiff's injuries. Dr. Hendricks has been practicing medicine for 30 years and has experience as a physician in the types of injuries which can occur as a result of automobile accidents. In addition, Dr. Hendricks stated that he does have some specific training in the field of biomechanics. Any shortcomings in this respect can be exposed during cross examination by the plaintiff. Plaintiff's first motion in limine is therefore denied.

### ii. Opinions which are not rendered to a reasonable degree of medical certainty

Plaintiff seeks to exclude opinion testimony by Dr. Hendricks which is not rendered to a reasonable degree of medical certainty. More precisely, plaintiff points out that Dr. Hendricks acknowledged that he cannot say whether nerve root irritation and radiculopathy present in an August 15, 2011 electromyogram were caused by the plaintiff's first neck surgery or whether they were caused by the collision. Defendants respond that this particular testimony, if anything, undermines the weight of Dr. Hendricks' testimony and does not provide a basis for exclusion of any portion of his testimony. The Court agrees. This lack of conclusiveness as to a single issue does not warrant exclusion of testimony on the subject. Plaintiff's second motion in limine is therefore denied.

### iii. Unsubstantiated opinions

Plaintiff asks the Court to exclude from trial testimony by Dr. Hendricks suggesting that plaintiff's treating physicians are part of a "network of referrals" and that plaintiff's spinal surgeries were medically unnecessary. Plaintiff bases this request on the fact that Dr. Hendricks refused to identify any other doctors who had similar beliefs about plaintiff's physicians and did not report Dr. Pachuri for what Dr. Hendricks believed to be an ill-advised surgery.

"In general, expert opinions which assess or critique another expert's substantive testimony are relevant, but opinions which attack an expert's credibility (*e.g.*, testimony that an expert is lying) are not." *In re Cessna 208 Series Aircraft Products Liab. Litig.*, MDL 1721, 2009 WL 1649773 (D. Kan. June 9, 2009) (citing *John McClelland & Assocs., Inc. v. Med. Action Indus., Inc.*, 2007 WL 1201478, at *4 (D. Kan. Apr. 23, 2007) and *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1312 (10th Cir. 2007)). The statements by Dr. Hendricks regarding plaintiff's physicians being part of a "network of referrals" is the latter type of critique, while Dr.

16

Hendricks' determination regarding whether the spinal surgery was advisable qualifies as the former. Accordingly, Dr. Hendricks may testify regarding whether the spinal surgeries undergone by plaintiff were medically necessary, but may not testify in a manner intended to attack the credibility and reputation of plaintiff's treating physicians. Plaintiff's third motion in limine is granted in part and denied in part as provided above.

### iv. Medical liens

As noted above, there is no dispute between the parties as to whether evidence regarding medical liens should be excluded. Accordingly, plaintiff's fourth motion in limine is granted.

**IT IS THEREFORE ORDERED** that:

Defendants' Motion to Exclude Plaintiff's Biomechanical Engineering Expert and Brief in Support (Doc. 60) is **denied**.

Defendant TDC's Motions in Limine and Brief in Support (Doc. 65) are **granted in part and denied in part**, as provided herein.

Defendant Randy Easterling's Motions in Limine and Brief in Support (Doc. 66) are **granted in part and denied in part**, as provided herein.

Plaintiff's Motion in Limine (Doc. 67) is also **granted in part and denied in part**, as provided herein.

**SO ORDERED** this 4th day of December, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE